IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LINDA TAYLOR**                                                                     **PLAINTIFF**

**V.**                                            **CAUSE NO. 3:15-CV-585-CWR-FKB**

**CONSOLIDATED PIPE & SUPPLY**                            **DEFENDANTS**
**COMPANY, INC.; BRUCE FREEMAN**

## ORDER

Before the Court is the defendants' motion to dismiss or for other sanctions. The matter is fully briefed and ready for review.

**I.  Background**

On May 13, 2015, Linda Taylor was driving in Rankin County, Mississippi when her vehicle was struck by Bruce Freeman's truck. Freeman conceded liability at the scene. Taylor subsequently filed this personal injury suit against Freeman and his employer, Consolidated Pipe and Supply Company.

The legal battle focused on the extent of Taylor's injuries. Taylor's complaint alleged that the accident caused "serious and permanent . . . injuries to her neck, back, right shoulder, numbness in her right arm and tingling in her fingers, along with injury to her skeletal system, muscular system, and nervous system."

Written discovery commenced. When asked about her medical history, Taylor wrote that she could "not remember the exact dates of treatment and/or all her complaints," but "has never [been] treated for neck or shoulder pain before the subject accident." She gave the defendants written permission to obtain all of her medical records.

The defendants' search was thorough. They obtained records from medical providers who had seen Taylor as far back as 1992. The defendants say they sent copies of these records to Taylor's attorney during the discovery period—a contested point to which we will return.

The defendants then deposed Taylor. She was asked whether prior to the accident she had ever suffered from pain in her arm, shoulder, neck, or back. She answered "no." Taylor was asked whether prior to the accident she had sought medical treatment for pain to her arm, shoulder, neck, or back. Again she answered "no." Finally, Taylor was asked whether prior to the accident she had ever been prescribed psychiatric medication like Xanax. Her answer was the same: "no."

The defendants now contend that those answers were lies. They say, and Taylor admits, that decades of records show she had dozens of appointments for shoulder, neck, and back pain before the accident. Taylor took pain medication and received injections for shoulder, neck, and back pain; referrals to orthopedics and physical therapy followed.[1] She also took Xanax for other issues. The defendants argue that Taylor's total lack of candor warrants dismissal of her case.

Taylor denies the allegations and counters with her own accusations. She argues that she could not remember all of her medical visits over the years, and has suffered from memory loss since the accident. Taylor adds that if anyone has committed a fraud upon the Court, it is the defendants, who allegedly withheld her medical records during discovery to ambush her with this motion.

---

[1] A sampling of medical records reveals the severity of her symptoms over the years. *See, e.g.*, Records of 03/12/96 ("Left shoulder pain. For the last two years, but really bad over the last year and over the last several months she has been miserable."); 09/23/02 ("Low back pain for one month"); 09/26/02 ("In severe pain in lower back"); 10/27/03 ("Can't turn neck (had this before . . .)"); 06/01/05 ("Hurt right shoulder/upper back for 2½ weeks"); 09/21/11 ("Left shoulder pain/numbness"); and 10/5/11 ("Left shoulder pain").

**II.     Legal Standards**

    **A.     The Evidence**

The parties dispute whether the defendants' attorney timely shared the medical records with Taylor's attorney. Because that issue required consideration of material outside the pleadings, it "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Stokes v. Dolgencorp, Inc.*, 367 F. App'x 545, 547 (5th Cir. 2010) (unpublished).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1); *Tran Enterprises, LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

    **B.     The Merits**

"[D]ismissal with prejudice is an extreme sanction" appropriate "only if: (1) there is a clear record of delay *or* contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the best interests of justice." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (quotation marks and citations omitted). "[I]t is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is the stubborn resistance to authority which justifies a dismissal with prejudice."

3

*McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988) (quotation marks and citation omitted). In *Brown*, the Fifth Circuit recognized perjury as contumacious conduct. 664 F.3d at 77.

### III. Discussion

At the beginning of a deposition, the witness solemnly swears to tell the truth, the whole truth, and nothing but the truth, under penalty of perjury. The oath "is not trivial." *Id.* It has power and force. It means something. Which makes it so disappointing to have to recount the various ways the plaintiff committed perjury.

Taylor was asked straightforward questions about her medical history. She repeatedly denied having any shoulder, neck, and back pain before the subject accident. Those answers were false. She also misrepresented her prescription history.

Taylor says she answered to the best of her memory. It is true that her interrogatory responses were prefaced with that (pro forma) qualification, and under the summary judgment standard those will not be held against her. Taylor's deposition answers, however, are indefensible. Total memory loss as to every doctor's visit, every course of treatment, and every prescription written to treat her complaints of pain is fanciful. The record cannot support any explanation for those misrepresentations other than a desire to conceal the truth.[2]

This Court has presided over cases where plaintiffs have proof of memory loss. *E.g.*, *Wells v. Robinson Helicopter Co.*, No. 3:12-CV-564-CWR-FKB, 2015 WL 1189847, at *1 (S.D. Miss. Mar. 16, 2015). This is not one of them. There is no medical evidence to support Taylor's claim. The notion of memory loss first appears in her last-minute, self-serving affidavit. The affidavit cannot help her: it contradicts her deposition testimony and attendant handwritten

---

[2] Taylor, of course, could have refreshed her recollection before the deposition by obtaining her medical records. *See, e.g.*, *Lawton-Davis v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-CV-1157-ORL-DAB, 2016 WL 1383015, at *5 (M.D. Fla. Apr. 7, 2016) ("Plaintiffs cannot now claim that they were prejudiced by the late disclosure of her own medical records by a third party.").

4

exhibit listing her ongoing symptoms. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).

Taylor then says there was no intent to deceive because she gave the defendants an unlimited medical release. But an equally-plausible explanation is that Taylor gambled that the defendants would not be able to locate her full medical history.[3] The release does not change the obvious untruthfulness of her testimony.

Finally, Taylor attempts to deflect responsibility by accusing her opponents of withholding her medical records during the discovery period.[4] But between February and October 2016, the defendants' attorneys sent six letters to Taylor's counsel to share the records. The letters, which were authenticated at an evidentiary hearing held on this issue, establish "a rebuttable presumption that the document has been received by the addressee in the usual time." *Geico Ins. Co. v. White*, 339 F. App'x 394, 396–97 (5th Cir. 2009) (quotation marks and citation omitted). Taylor has "provided no circumstantial evidence" to support that they were not received. *Id.* As a result of the uncontroverted evidence that the defendants timely sent records to Taylor during the discovery period, there was no discovery violation.[5]

What remains is the sanction. Taylor's 35-page response brief does not suggest any alternative, lesser sanction than dismissal. When pressed for alternatives at the hearing on the motion, her counsel suggested that the Court might assess defendants' attorney's fees against him or allow the defendants to re-depose Taylor.

---

[3] Taylor's counsel may have submitted the unlimited medical release because Taylor hid the truth from him as well.
[4] Her related argument is that the defendants have somehow waived their right to file this motion. Her supporting authorities are inapposite. *See, e.g.*, *MS Credit Ctr. v. Horton*, 926 So. 2d 167, 179 (Miss. 2006).
[5] Taylor also asserts that her opponent was wrong to "informally" supplement the record—*i.e.*, share responsive documents without filing a formal notice of service on the docket sheet. The argument crumbled when the defendants observed that Taylor's counsel repeatedly did the same thing.

If her counsel had lied, he could be admonished or sanctioned. In this case, though, the misrepresentations came from the client herself. The consequences should be imposed upon her.

The Court has considered ordering Taylor to pay the defendants' attorney's fees, limiting her damages claims at trial to those untainted by perjury, or simply allowing defendants to re-depose her. Three facts counsel against those options. The first is that her perjury was so overwhelming that it reaches almost every kind of physical and emotional injury she claims the accident caused. Second, the record shows that Taylor not only misrepresented her situation to the defendants, but also failed to disclose her medical history to her post-accident treating physicians, who (it so happens) were different from the many medical providers who had previously treated her. That pattern is exactly the kind of "stubborn resistance to authority which justifies a dismissal with prejudice." *McNeal*, 842 F.2d at 792 (quotation marks and citation omitted). Finally, simply allowing her to be re-deposed at this juncture would alter the scales by allowing Taylor to correct and clarify her tainted testimony. Taylor's misconduct should not be so easily excused.

In a similar case, the Fifth Circuit wrote that it "consider[s] dismissal with prejudice to be a more appropriate sanction when the objectionable conduct is that of the client, and not the attorney." *Brown*, 664 F.3d at 77 (citation omitted). *Brown* affirmed a district court's decision to dismiss with prejudice rather than permit the case to go to trial with an adverse instruction regarding the plaintiff's perjury. *Id.* at 78; s*ee also Snider v. L-3 Communications Vertex Aerospace*, No. 3:09-CV-704-HTW-LRA, 2016 WL 3648281, at *16 (S.D. Miss. Mar. 15, 2016) (finding dismissal appropriate sanction "considering that every aspect of [plaintiff's] claims now is tainted by her abusive and contumacious conduct.").

6

Our situation is no different. Taylor "deceitfully provided conflicting testimony in order to further [her] own pecuniary interests . . . and, in doing so, undermined the integrity of the judicial process. Through [her] perjured testimony, [Taylor] committed fraud upon the court, and this blatant misconduct constitutes contumacious conduct." *Brown*, 664 F.3d at 78. The undersigned has struggled to find, but does not see a less onerous sanction that would address Taylor's pattern of conduct, achieve deterrence, and preserve the integrity of the judiciary.

A few final words are necessary. Today's result is unfortunate because liability is not at issue in this case. Fault of the accident lies with the driver, but Taylor's lies about the severity of her injuries will preclude appropriate compensation for those injuries. They also stymie the deterrent effect this lawsuit might have had on the defendants' behavior.

Depositions are an important tool of discovery and should be used to seek the truth. Parties' strategies about whether a case will be litigated further or whether early resolution will be pursued are shaped, in part, by what is revealed from a deposition—both the facts obtained and how a deponent presents and performs. Lying throughout a deposition (or in other forms of discovery) therefore serves no purpose.

"The proper administration of justice depends on people testifying truthfully under oath." *Id.* at 77 (quotation marks omitted). Courts have a duty to protect the public and safeguard the judicial process. *See Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103, 106 (D. Md. 1989). As the Supreme Court explained more than 70 years ago, "tampering with the administration of justice . . . is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate

7

cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

The harshest sanction imposed today is justified by the plaintiff's extreme misconduct. The Court hopes it sends a signal to litigants and attorneys about the importance of truth in our system of justice.

**IV.   Conclusion**

The motion is granted. This case is dismissed with prejudice. A separate Final Judgment will issue this day.

**SO ORDERED**, this the 20th day of July, 2017.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE